UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LOURDES RIOS,

        Plaintiff,

v.                                                              Case No:   6:20-cv-1069-LRH

COMMISSIONER OF SOCIAL
SECURITY

        Defendant.

**MEMORANDUM OF DECISION[1]**

Lourdes Rios ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Claimant raises one argument challenging the Commissioner's final decision, and based on that argument, requests that the matter be reversed and remanded for an award of benefits or for further administrative proceedings. (Doc. 27, at 9, 15). The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and should

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Docs. 21, 25-26.

be affirmed.  (*Id.*, at 15).  For the reasons discussed herein, the Commissioner's final decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY.

On April 3, 2017 Claimant filed an application for DIB, alleging that she became disabled on June 16, 2016.  (R. 10, 197).[2]  Her claim was denied initially and on reconsideration, and she requested a hearing before an ALJ.  (R. 66-93, 110-11).  A hearing was held before the ALJ on August 13, 2019, at which Claimant was represented by an attorney.  (R. 28-65).  Claimant and a vocational expert ("VE") testified at the hearing.  (*Id.*).  Following the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.  (R. 7-22).  Claimant sought review of the ALJ's decision by the Appeals Council.  *See* R. 164-67.  On April 27, 2020, the Appeals Council denied the request for review.  (R. 1–6).  Claimant now seeks review of the final decision of the Commissioner by this Court.  (Doc. 1).

---

[2] Claimant's application for DIB states that her alleged disability onset date is August 3, 2012.  (R. 172-73).  However, the record reflects that Claimant later amended her onset date to June 16, 2016.  (R. 197).

**II.    THE ALJ'S DECISION.**[3]

After considering the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).  (R. 11-18).[4]  The ALJ first found that Claimant last met the insured status requirements of the Social Security Act on December 31, 2017.  (R. 12).  The ALJ concluded that Claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 16, 2016 through her date last insured of December 31, 2017.  (*Id.*).

The ALJ then found that through the date last insured, Claimant suffered from the following severe impairments:  fibromyalgia, bilateral degenerative joint disease of the knees, renal cell carcinoma with right nephrectomy, and unspecified gastroesophageal reflux disease ("GERD").  (*Id.*).  The ALJ also found that Claimant had high cholesterol, slight scoliosis, mild scattered spondylosis, hyperlipidemia, vitamin D deficiency, thrombocytopenic disorder, and calcific

---

[3] Upon a review of the record, the Court finds that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.  (Doc. 27).  Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference and only restates them herein as relevant to considering the issues raised by Claimant.

[4] An individual claiming Social Security disability benefits must prove that he or she is disabled.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy.  *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

tendinitis, but that these conditions do not satisfy the criteria of severe impairments. (R. 13). The ALJ further found Claimant had mild depressive disorder, but because this medically determinable mental impairment did not cause more than minimal limitation in Claimant's ability to perform basic mental work activities, the condition was nonsevere. (*Id.*). The ALJ concluded that Claimant did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14).

After careful consideration of the entire record, the ALJ determined that Claimant had the residual functional capacity ("RFC") to perform light work as defined in the Social Security regulations,[5] with the following restrictions:

> [Claimant] could lift, carry [,] push and/or pull twenty pounds occasionally and ten pounds frequently; she could stand and walk for approximately six hours and sit for approximately six hours in an eight-hour workday with normal breaks; in addition to regular breaks, she required a one-minute break every thirty minutes while at the workstation; she could occasionally climb stairs, stoop, kneel, crouch, and crawl; she could never climb ladders or scaffolds; she could handle

---

[5] The social security regulations define light work to include:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

>and reach no more than frequently; she needed to avoid exposure to vibration, unprotected heights and hazardous machinery.

(R. 15).

Based on this assessment, the ALJ concluded that through the date last insured, Claimant was capable of performing past relevant work, which included work as an administrative assistant, administrative clerk, and retail store manager. (R. 17). Accordingly, the ALJ concluded that Claimant was not under a disability, as defined by the Social Security Act, at any time from her alleged disability onset date through the date last insured. (R. 18).

### III. STANDARD OF REVIEW.

Because Claimant has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

**IV.   ANALYSIS.**

In the Joint Memorandum, which the Court has reviewed, Claimant raises only one assignment of error: that the ALJ did not properly and thoroughly consider the severity of all of Claimant's impairments in making the RFC determination. (Doc. 27, at 9). Accordingly, this is the only issue the Court will address.

The ALJ is tasked with assessing a claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. In determining a claimant's RFC, the ALJ must consider all relevant evidence,

including the opinions of medical and non-medical sources. 20 C.F.R. § 404.1545(a)(3).

Claimant argues that the ALJ erred in fashioning the RFC because he failed to adequately consider Claimant's fatigue. (Doc. 27, at 9-11). Specifically, Claimant argues that the ALJ erroneously rejected both the uncontradicted testimony of the VE and Claimant's subjective complaints, which Claimant contends demonstrate that her fatigue was work preclusive. (*Id.*). Although Claimant presents these as one collective assignment of error, for the sake of clarity, the Court will consider each argument separately as follows.

A. <u>Testimony of the VE</u>.

An ALJ may consider the testimony of a VE at step five of the sequential evaluation process when determining whether the claimant can perform other jobs in the national economy. *Phillips*, 357 F.3d at 1240. The ALJ must pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). However, the ALJ is not required to include in the hypothetical question "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported," *Crawford v. Comm'r of Soc. Sec. Admin.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony, but fails to include all the

claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

During the administrative hearing, the ALJ posed a series of six hypothetical questions to the VE, with each ensuing hypothetical adding and/or modifying various limitations. (R. 55-60).

- In the first hypothetical, the ALJ asked the VE to assume an individual of claimant's age, education, and work history who could: lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb stairs, stoop, kneel, crouch, and crawl but should never climb ladders or scaffolds; handle and reach no more than frequently; and must avoid exposure to vibration, unprotected heights, and hazardous machinery. (R. 55-56). The ALJ asked the VE whether an individual with these characteristics could perform Claimant's past relevant work. (R. 56). The VE answered in the affirmative. (*Id.*).

- In the second hypothetical, the ALJ asked the VE to assume the same facts as hypothetical number one, except that the individual would also need a one-minute break every 30 minutes while at their workstation. The VE again testified that the individual would be able to perform Claimant's past relevant work. (*Id.*).

- In the third hypothetical, the ALJ asked the VE to assume the same facts as hypothetical number one, except that the individual could: lift, carry, push, and pull ten pounds occasionally; stand and walk for two hours in an eight-hour workday; sit for six hours in an eight-hour workday; and, the individual possessed the same limitations as hypothetical number two (that is, the individual would need a one-minute break every 30 minutes while at their workstation). (R. 56-57). The VE testified that the individual could perform the administrative assistant job as defined in the DOT. (R. 57).

- In the fourth hypothetical, the ALJ asked the VE whether an individual who needed at least four unscheduled breaks, each lasting 15 minutes, in an eight-hour workday, could perform the jobs previously identified by the VE.  (R. 58).  The VE opined that while an employer would tolerate these types of breaks from a skilled individual performing the jobs of retail store manager, administrative clerk, or administrative assistant, if an individual required these breaks at an unskilled job, the breaks would be work preclusive.   (R. 58-59).

- In the fifth hypothetical, the ALJ asked the VE to assume that the individual's pain and fatigue occasionally (meaning, one-third of the eight-hour workday) interfered with concentration, pace, and task persistence.  (R. 59).  In response to this hypothetical, the VE testified that the individual's fatigue would be work preclusive. (*Id.*).

- Finally, in hypothetical six, the ALJ asked if an employer would find it acceptable that the individual was absent from work two days per month.  (*Id.*).  The VE testified that while a skilled worker would be covered by annual and sick leave, unskilled workers would be precluded from work, because two absences per month would be unacceptable to employers.  (R. 59-60).  The VE further testified that three absences per month would be work preclusive for a skilled worker, such as a manager.   (R. 60).

Claimant's counsel also posed hypothetical questions to the VE. Specifically, Claimant's counsel asked the VE to consider whether a hypothetical individual would be precluded from work if the individual needed to get up from the workstation and walk around for five minutes every half hour.  (R. 62).  The VE testified that the individual could be precluded from unskilled work, as, in his experience, employers might "begin to feel like they're being cheated."   (R. 62-63). In response to another hypothetical posed by Claimant's counsel, the VE testified

that an individual's ability to perform the previously identified jobs would "certainly" be interfered with if the individual had to leave the workstation for restroom breaks more than once an hour. (R. 64).

In finding that Claimant could perform all of her past relevant work, the ALJ relied upon the VE's testimony in response to the ALJ's first two hypotheticals, which encompassed Claimant's impairments and RFC. (R. 15, 18, 55-56). The ALJ did not rely upon or otherwise reference any of the VE's testimony in response to the other hypotheticals the ALJ posed, nor to any of the VE's testimony in response to the hypotheticals posed by Claimant's counsel.

Claimant argues that the ALJ erred by rejecting some of the VE's testimony, specifically his responses to the ALJ's fourth and fifth hypotheticals, as well as the hypotheticals posed by Claimant's counsel. (Doc. 27, at 10). In particular, Claimant points to the VE's testimony that if an individual needed at least four unscheduled breaks, each one lasting fifteen minutes, in most cases, work would be precluded. (*Id.* (citing R. 58-59)). Claimant further cites to the VE's testimony that if an individual's pain and fatigue interfered with concentration, pace, and task persistence occasionally (one-third of the workday), work would also be precluded. (*Id.* (citing R. 59)). Last, Claimant references the VE's testimony that the ability to maintain employment would be compromised for an individual who was off-task, *i.e.*, needed to leave the workstation for six minutes per hour. (*Id.* (citing R. 62-63)).

Notably, Claimant takes no issue with the ALJ's first two hypotheticals, but rather Claimant appears to be arguing that the ALJ should have also incorporated and relied upon the VE's testimony in response to questioning that proposed additional restrictions related to Claimant's fatigue and the need for more frequent and extensive breaks and time off from work.

Claimant contends that the VE's testimony in response to these hypotheticals is "uncontradicted," and therefore the ALJ erred in failing to rely upon it. (*Id.*, citing *Lamb v. Bowen*, 847 F.2d 698, 704 (11th Cir. 1988)). This is the extent of Claimant's argument – Claimant does not argue that the ALJ's hypotheticals (in particular the first two) were not based on substantial evidence and/or supported by the medical evidence of record, nor does Claimant argue that the VE's testimony in response to the first two hypotheticals was not supported by the record. Rather, the Claimant is limiting her argument solely to a claim that, in determining whether Claimant could perform past relevant work, the ALJ chose to cite to and rely upon the VE's answers to two of the hypotheticals while not citing or relying upon the VE's other answers, which discussed more severe limitations related to fatigue.

The Court is not persuaded by Claimant's argument. Although Claimant characterizes the VE's testimony that Claimant relies upon as "uncontradicted," Claimant does not expand on this point, so the Court is left to decipher exactly what Claimant means by "uncontradicted." Is Claimant arguing that the ALJ should

- 11 -

have engaged at least one more VE and obtained testimony that contradicted the original VE's?  Or is Claimant arguing that the VE's testimony upon which the ALJ relied is not supported by the medical evidence of record?  Further, the Court is puzzled as to how only some of the VE's testimony is uncontradicted (the testimony relating to the hypotheticals that contain more restrictive limitations), while the rest of the VE's testimony would ostensibly not be uncontradicted?  On this basis alone, it would appear that Claimant's argument fails.  *See, e.g.*, *Romero v. Saul*, No. 3:18-CV-467-J-JRK, 2019 WL 4594592, at *2 (M.D. Fla. Sept. 23, 2019) (finding plaintiff's argument waived for lack of development); *see also Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) ("There is no burden upon the district court to distill every potential argument that could be made based on the materials before it . . . ." (quoting *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

Claimant's argument fails for another reason.  The ALJ is charged with relying upon VE testimony and hypotheticals that are supported by the medical evidence of record, and Claimant simply has not identified record evidence that would suggest that the VE's testimony in response to these other hypotheticals (that contain more severe limitations) was supported by substantial evidence.[6]  Nor has

---

[6] To the extent Claimant is referencing her own subjective testimony as support for the VE's testimony regarding more severe limitations, Claimant provides no authority or argument in support.  (Doc. 27, at 10-11).  Moreover, as discussed below, the ALJ properly discounted the Claimant's subjective testimony, and without more, the Court cannot say that the VE's testimony as to more severe limitations was supported by substantial evidence such that the ALJ erred by not considering it.  *See, e.g.*, *Marra v. Comm'r Soc. Sec.*, No. 6:16-cv-936-Orl-DCI, 2017 WL 4216465, at

Claimant identified or argued that the hypotheticals and VE testimony that the ALJ did rely upon were not supported by substantial evidence. To the contrary, the limitations contained in the ALJ's first two hypotheticals are in fact supported by the medical evidence of record. *See* R. 16 (citing R. 72-73, 86-87, 275, 350, 372-74, 445). As such, Claimant's argument here fails. *See, e.g.*, *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (citations omitted) (noting that an ALJ is "free to accept or reject restrictions in a hypothetical question that were not supported by substantial evidence, even when the hypothetical was posited by the ALJ and not counsel");[7] *see also Smith v. Colvin*, No. 4:12-cv-03588-DCN, 2014 WL 1159056, at *3 (D.S.C. Mar. 20, 2014) (citing *Hammond v. Apfel,* 5 F. App'x 101, 105 (4th Cir.2001)) ("An ALJ is not required to accept the answers a VE gives to a hypothetical that contains limitations not ultimately adopted by the ALJ."); *Reedy v. Saul*, No. CV 19-4916, 2020 WL 7711393, at *8 (E.D. Pa. Dec. 29, 2020) (emphasis and alterations in original) ("While the ALJ is not *required* to ask hypotheticals that are

---

*9 (M.D. Fla. Sept. 22, 2017) (where the only evidence supporting limitations that ALJ declined to incorporate in hypothetical to VE stemmed from claimant's testimony, and ALJ's rejection of that testimony was supported by substantial evidence, ALJ was not required to include those limitations in hypothetical to the VE); *Wilcox v. Colvin*, No. 8:13-cv-2378-T-33MAP, 2014 WL 6685490, at *5 (M.D. Fla. Nov. 25, 2014) ("Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record.").

[7] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

inconsistent with the record, he may and often does 'proffer' a variety of assumptions to the [VE].' However, for the purposes of determining disability, the ALJ may only consider the answers to questions that 'accurately portray[] the claimant's individual physical and mental impairments.'" (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984))).[8]

B. <u>Claimant's Subjective Complaints</u>.

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a

---

[8] Claimant cites to one decision, *Lamb v. Bowen,* 847 F.2d 698, 704 (11th Cir. 1988) for the proposition that an ALJ may not reject uncontradicted VE testimony. (Doc. 27, at 10). I do not quarrel with this doctrine, however the ALJ did not run afoul of the doctrine here. In *Lamb*, the Appeals Council was faced with VE testimony that, based on the RFC, the plaintiff was incapable of engaging in substantial gainful activity – in other words the VE testified that the plaintiff could not work. 847 F.2d at 704. The Appeals Council rejected this testimony and found the plaintiff capable of performing light work. 847 F.2d at 704. In contrast, in the present case the VE testified in response to hypotheticals that encompassed the limitations set forth in the RFC that Claimant could perform her past relevant work, and the ALJ relied upon this testimony. (R. 18, 55-56).

clearly articulated credibility finding that is supported by substantial evidence. *Id.* at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(c)(1)-(3). Factors relevant to the ALJ's consideration regarding a claimant's allegations of pain include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain. *Id.* § 404.1529(c)(3)(i)–(vii).

Claimant argues that the ALJ erred in failing to accept Claimant's "uncontradicted testimony" regarding the adverse impact of her fatigue. (Doc. 27, at 10-12). In support of this argument, Claimant points to her testimony that: (1)

she spends more time at home laying down, as opposed to sitting or standing, due to fatigue and leg pain; (2) she estimated laying down for about an hour two to three times a day; (3) she was unable to perform activities of daily living such as mopping and vacuuming, because of fatigue; and (4) she needed to lay down even after cooking. (*Id.*, at 10-11 (citing R. 42, 46-47)). Claimant contends that the ALJ should have factored this testimony into his formulation of the RFC. (*Id.*, at 11).

Despite Claimant's assertion to the contrary, the ALJ did consider Claimant's fatigue in evaluating the RFC. *See* R. 15 ("The claimant has consistently complained of pain. Chronic fatigue has been noted… The undersigned considered this evidence in determining an appropriate residual functional capacity." (citing R. 275)). The ALJ determined, however, that Claimant's subjective testimony regarding her limitations was not fully credible, and explained the reasoning in support of his determination. (R. 17). Specifically, the ALJ noted that Claimant is "somewhat active" and cited to evidence of her activities of daily living, including her ability to dress and bathe independently, drive, do laundry, shop with her husband, cook with frequent breaks, and attend church services for an hour each week. (*Id.*). And as these findings are supported by the evidence of record, (R. 47, 51-52, 214, 464-65), the ALJ did not err. *See, e.g., Moore v. Barnhart,* 405 F.3d 1208, 1211-1212 (11th Cir. 2005) (ALJ did not err in finding that claimant with fibromyalgia was capable of performing light work where claimant's subjective

testimony was inconsistent with record evidence that claimant could drive, provide childcare, bathe and care for herself, exercise, and perform housework). *See also Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 777 (in finding that ALJ did not err in assessing claimant's credibility, despite claimant's citation to portions of the record favorable to his argument, "[o]ur inquiry is whether the ALJ pointed to sufficient relevant evidence such that a reasonable person would accept the ALJ adequately supported her conclusion"); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (when reviewing the ALJ's credibility determination "[t]he question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

In sum, Claimant has failed to demonstrate that the ALJ reversibly erred, and as such, the final decision of the Commissioner is due to be affirmed.

**V.     CONCLUSION.**

Based on the foregoing, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED.**
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 25, 2022.

*Leslie Hoffman Price*

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record